IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

**TAYLOR FARMS L.L.C.,**

    **Plaintiff,**

v.

Case No. 5:23-cv-00061

**NATIONAL FRUIT PRODUCT COMPANY, INCORPORATED, d/b/a ROYAL EQUIPMENT COMPANY / WHITE HOUSE FOODS**

  SERVE: David C. Gum, Jr., Registered Agent
             701 Fairmont Avenue
             Winchester, Virginia 22601

    **Defendant.**

## COMPLAINT

Plaintiff Taylor Farms L.L.C. ("Taylor Farms"), by and through its counsel, files this action against National Fruit Product Company, Incorporated d/b/a Royal Equipment Company ("National Fruit"), and states as follows:

## PARTIES

1. Plaintiff Taylor Farms is a West Virginia limited liability company, organized under the laws of the state of West Virginia, with its principal place of business at 1434 Arden Nollville Road, Inwood, West Virginia 25428. Each of Taylor Farm's members is a citizen of West Virginia.

2. National Fruit is a corporation organized and existing under the laws of Virginia and with its principal place of business at 701 Fairmont Ave., Winchester, Virginia 22601. National Fruit conducts business under the name White House Foods.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a), because this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. This Court has personal jurisdiction over National Fruit because National Fruit's principal place of business is in Virginia, and it is a Virginia corporation. Also, National Fruit regularly conducts business in the Commonwealth of Virginia.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(l) and (2) because National Fruit resides in this District, and a substantial part of the events giving rise to the claim occurred in this District.

**FACTUAL BACKGROUND**

6. National Fruit manufactures apple products including, for example, apple cider vinegar, apple juice and cider, apple butter, apple sauce, and cleaning vinegar.

7. Taylor Farms produces and sells a variety of produce, especially apples, along the east coast of the United States.

8. Taylor Farms, in addition to running its own farms, contracts to lease, rehabilitate, manage, and run farms and orchards owned by other entities or individuals.

9. From in or about April 2019 through December 2022, National Fruit leased one or more of its orchards to Taylor Farms.

10. In 2019, Taylor Farms paid National Fruit rent pursuant to a lease agreement, and National Fruit paid Taylor Farms for apples produced from the orchard pursuant to the parties' contract.

11. Beginning in 2020, National Fruit adjusted the billing arrangements by deducting Taylor Farm's rental payments from the amounts owed by National Fruit for the purchase of apples.

12. In or around August 2020, National Fruit and Taylor Farms drafted, but did not sign, an agreement to memorialize their business arrangement (the "2020 Fruit Purchase Agreement"), which included terms regarding the sale and price of apples, the leasing of National Fruit's orchards, and dispute resolution. A true and accurate copy of the 2020 Fruit Purchase Agreement is attached hereto as **Exhibit 1**.

13. In 2020, Taylor Farms, in addition to harvesting and selling apples to National Fruit, provided National Fruit with apple and water hauling and orchard maintenance.

14. Throughout 2020 and continuing through 2022, Taylor Farms delivered apples to National Fruit multiple times per week during each harvesting season.

15. In addition to delivering apples harvested from National Fruit's orchards, Taylor Farms delivered additional apples from its own orchards during the 2020 and 2021 harvesting seasons.

16. Taylor Farms was required to deliver all of National Fruits' harvested apples to National Fruit but was permitted to and did sell its own apples to other manufacturers.

17. Once the apples were delivered to National Fruit, they were inspected by licensed inspectors from the United States Department of Agriculture ("USDA") according to federal instructions.

18. The USDA inspectors would weigh the apples, inspect a random sampling of apples for quality and defects, and issue an inspection certificate for each delivery to National Fruit.

19. At all relevant times, National Fruit received, inspected, and accepted the apples.

20. Pursuant to the 2020 Fruit Purchase Agreement, Taylor Farms was required to deliver apples from the fall harvest to National Fruit, and National Fruit was required to pay Taylor Farms 50% of its outstanding balance by December of 2020 with the remaining 50% to be paid in six equal installments from January 2021 through June 2021.

21. To date, National Fruit owes Taylor Farms $29,288.00 for apples delivered and services performed in 2020.

22. In or around October 2021, National Fruit and Taylor Farms drafted, but only National Fruit signed, three agreements to memorialize their business arrangements related to the 2021 harvest season (the "2021 ABS Purchase Agreement," the "2021 NFO Purchase Agreement," and the "2021 TF Purchase Agreement"), which included terms regarding the cultivation, sale, and price of apples. True and accurate copies of the 2021 ABS Purchase Agreement, the 2021 NFO Purchase Agreement, and the TF Purchase Agreement are attached hereto as **Exhibit 2, Exhibit 3**, and **Exhibit 4**, respectively.[1]

23. When Taylor Farms delivered shipments of apples to National Fruit, National Fruit would issue a Raw Products Cannery Certificate (the "Delivery Tickets") for each shipment.

24. The Delivery Tickets contained a unique ticket number, the weight of the apples received, and the number and weight of the bins used to transport the apples.

25. A sample of each delivery of apples was taken and inspected according to the inspection instructions of the USDA.

---

[1] Pursuant to the terms of the Agreements, Plaintiff will request that Exhibits 2–4 be filed under seal.

26. One to two weeks after each delivery, Taylor Farms generally received an inspection ticket ("Inspection Ticket") from National Fruit for each delivery detailing the grade of apples received.

27. The Inspection Tickets also showed the size, bruise count, weight in pounds, culls, and the types, number and weight of bins used to transport the apples.

28. Each Inspection Ticket is also signed and dated by a duly authorized inspector of the USDA.

29. Based on the information documented on the Delivery and Inspection Tickets, National Fruit calculated the amount owed to Taylor Farms.

30. National Fruit did not reject any apples or inform Taylor Farms within a reasonable time of any defects that would warrant a reduction in the price paid per pound of apples.

31. National Fruit would send sporadic checks to Taylor Farms in amounts that did not correspond to the Delivery Tickets and without reference to the Delivery Ticket numbers.

32. National Fruit made only partial payments to Taylor Farms and has failed to make full payments to Taylor Farms for the apples and services performed.

33. As a result of the late payments and increasing amounts due, in March of 2022, Taylor Farms and National Fruit drafted and executed a Letter of Understanding ("LOU") with a clearly defined payment plan. A true and accurate copy of the LOU is attached hereto as **Exhibit 5**.

34. The terms of the 2022 payment plan required National Fruit to pay Taylor Farms $1,803,708.27 for apples delivered in 2021.

35. As set forth in Exhibit 5, National Fruit agreed to make 31 weekly payments starting out at $60,000.00 or more for five weeks and $57,819.81 every week thereafter until mid-September 2022.

36. Despite the clear terms of the payment plan signed by National Fruit, as of the end of September 2022, National Fruit had paid only $1,193,453.24 of the $1,803,708.27 owed to Taylor Farms.

37. After Taylor Farms engaged an attorney in January 2023 to help collect all amounts due, National Fruit responded that it had deducted millions of dollars from the invoiced amounts due for defects in the apples, unilaterally imposed credits, and other adjustments.

38. Despite making unilateral reductions several months to several years after first accepting the perishable goods, National Fruit never raised any concerns before and accepted the apples without protest.

39. Net of all rental payments owed, National Fruit has failed to pay $531,989.00 for apples it received, inspected, and accepted from Taylor Farms during the 2021 harvest season.

40. Taylor Farms and National Fruit relied on the terms of the LOU to govern the 2022 harvest season.

41. National Fruit issued Delivery Tickets for apples that Taylor Farms delivered during the 2022 harvest season.

42. National Fruit failed to pay all amounts due in accordance with the Delivery Tickets for the 2022 harvest season.

43. Net of all rental payments owed, National Fruit has failed to pay $3,155,411.00 for apples it received, inspected, and accepted from Taylor Farms during the 2022 harvest season.

44. In March of 2023, Taylor Farms and National Fruit met to discuss the outstanding balance that National Fruit owed (the "March 2023 Meeting").

45. Following the March 2023 Meeting, National Fruit made payments to Taylor Farms totaling $202,319.93.

46. Accordingly, National Fruit has failed to pay for apples received, as documented on the Delivery Tickets, and services performed and according to the terms of the agreements within the time frame agreed to, or even within a reasonable time.

47. National Fruit presently owes Taylor Farms $3,514,368.00 for services performed and apples delivered in 2020, 2021 and 2022.

48. As of the filing of this Complaint, Taylor Farms is entitled to recovery from National Fruit in the amount of $3,514,368.00, plus interest and court costs, and such other relief as allowable by law.

## COUNT I: BREACH OF CONTRACT

49. Taylor Farms incorporates by reference the statements and allegations previously set forth in its Complaint as if fully restated herein.

50. Taylor Farms entered into a valid and enforceable contract wherein National Fruit agreed to payment in exchange for the harvesting and delivery of apples by Taylor Farms.

51. Taylor Farms has timely and fully performed all of its obligations under the contracts with National Fruit.

52. National Fruit has breached its contractual obligations to Taylor Farms by failing to reject the apples delivered within a reasonable time after their delivery and by failing to pay for the apples and services within a reasonable time.

53. As a result of National Fruit's breach, Taylor Farms has incurred damages and is entitled to receive from National Fruit at least $3,514,368.00, plus interest and court costs, and such other relief as allowable by law.

## COUNT II: ACTION ON ACCOUNT

54. Taylor Farms incorporates by reference the statements and allegations previously set forth in its Complaint as if fully restated herein.

55. National Fruit is indebted to Taylor Farms on an account evidenced by the Delivery Tickets (the "Account").

56. National Fruit has failed to pay the balance owed on the Account despite multiple requests for payment.

57. National Fruit owes Taylor Farms not less than $3,514,368.00 on the Account, plus court costs, and such other relief as allowable by law.

## COUNT III: UNJUST ENRICHMENT

58. Taylor Farms incorporates by reference the statements and allegations previously set forth in its Complaint as if fully restated herein.

59. In reliance on the orders, agreements, and prior history of dealings with National Fruit, Taylor Farms delivered the apples to and performed the services for National Fruit with a reasonable expectation of receiving payment.

60. Taylor Farm's reliance on the orders, agreements, and prior history of dealings between the parties was reasonable.

61. The apples sold and services performed and invoiced by Taylor Farms to National Fruit for which National Fruit has failed to pay have an aggregate reasonable value of at least $3,514,368.00, plus interest.

62. National Fruit has benefited, to Taylor Farms' detriment, from Taylor Farms' delivery of the apples and performance of services, and National Fruit's failure to pay for the apples and services. National Fruit has been unjustly enriched as a result.

63. As a direct and proximate cause of National Fruit's unjust enrichment, Taylor Farms has been damaged in the amount of $3,514,368.00, plus interest and court costs, and such other relief as allowable by law.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Taylor Farms L.L.C. respectfully prays the Court as follows:

1. That it have and recover of the Defendant damages of at least $3,514,368.00 plus prejudgment and post-judgment interest as provided by law;

2. That the costs of this action, including Plaintiff's reasonable attorney's fees as provided by law, be taxed against the Defendant; and

3. For such other and further relief as the Court may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

                                        TAYLOR FARMS, L.L.C.
                                        By Counsel

/s/ Marc A. Peritz
Marc A. Peritz (VSB# 39054)
M. Hunter Rush (VSB# 97203)
Flora Pettit PC
90 North Main Street, Suite 201
P.O. Box 1287
Harrisonburg, VA 22802
Tel: (540) 437-3101
Fax: (540) 437-3101
map@fplegal.com
mhr@fplegal.com
*Counsel for Plaintiff*
4861-4958-1896